**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 21-22440-CIV-WILLIAMS/MCALILEY

DONALD J. TRUMP, *et al.*,

        Plaintiffs,

v.

FACEBOOK, INC. and
MARK ZUCKERBERG,

        Defendants.
_____/

**DEFENDANTS' MOTION TO TRANSFER
TO THE NORTHERN DISTRICT OF CALIFORNIA
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## INTRODUCTION

This case is meritless and should be dismissed as a matter of law, as Defendants will explain in due course in their forthcoming motion to dismiss. But even aside from its substantive deficiencies, Plaintiffs' lawsuit suffers from a threshold defect: It was filed in the wrong forum. Like all Facebook users, Plaintiffs accepted Facebook's Terms of Service as a condition of using the Facebook service. Those Terms unambiguously require users to litigate in California if they assert claims like these that arise out of or relate to Facebook's products or policies. As the Supreme Court has explained, a "valid forum-selection clause" like the one in Facebook's Terms "should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–64 (2013). Applying that rule, courts in this District and elsewhere routinely enforce Facebook's forum-selection clause and transfer cases to the Northern District of California pursuant to 28 U.S.C. § 1404(a). *E.g.*, *Loomer v. Facebook, Inc.,* 2020 WL 2926357, at *1 (S.D. Fla. Apr. 13, 2020); *Soffin v. Echannel Network, Inc.*, 2014 WL 2938347, at *2 (S.D. Fla. June 30, 2014); *see also, e.g.*, *Loveland v. Facebook, Inc.*, 2021 WL 1734800, at *1 (E.D. Pa. May 3, 2021); *Kidstar v. Facebook, Inc.*, 2020 WL 4382279, at *5 (D.N.J. July 31, 2020); *Hayes v. Facebook, Inc.*, 2019 WL 8275335, at *2 (D. Colo. Mar. 6, 2019). This Court should do the same and transfer this case to the Northern District of California under the forum-selection clause to which Plaintiffs agreed when they registered for and used Facebook.

## BACKGROUND

Facebook, Inc. is a public company headquartered in California. Pls.' First Am. Compl. ("Am. Compl.") (D.E. 16 at ¶ 26). It operates a social-media service that almost three billion people worldwide use to create personal profiles, build communities, and share content. *Id.* ¶¶ 2, 20. Mark Zuckerberg is the CEO of Facebook and a resident of California. *Id.* ¶ 27.

Plaintiffs in this case—Donald J. Trump, Elizabeth Albert, Kiyan and Bobby Michael, Jennifer Horton, Andres Cabos, Magalys Rios, and Maria Rodriguez-Fresneda (collectively, "Plaintiffs")—are current and former Facebook users. *Id.* ¶ 243. They each established their Facebook accounts between 2007 and 2019. *Id.* ¶¶ 59, 143, 148, 153, 165, 174, 182.

From at least 2007 to the present, Facebook has required all users registering a new account to agree to Facebook's Terms of Service (the "Terms"). *See* Decl. of Michael Duffey ("Duffey Decl.") at ¶ 2 (attached). To complete the registration process, users must confirm that they have read and agree to the Terms. *See id.* ¶ 3.[1]

At all relevant times, Facebook's Terms included a forum-selection clause identifying California as the required venue for all claims arising out of or relating to Facebook's Terms or Facebook's products. *See, e.g.*, *id.* ¶ 5; *id.*, Ex. A at § 4(4) (current Terms); *id.*, Ex. B at § 4(4) (Terms effective Oct. 1, 2020); *id.*, Ex. C at § 4(4) (Terms effective July 31, 2019); *id.*, Ex. D at § 4(4) (Terms effective Apr. 19, 2018). Facebook's current forum-selection clause states:

> *For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County.* You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

*Id.*, Ex. A at § 4(4) (emphasis added). The "Facebook Products" include "Facebook, Messenger, and the other products, features, apps, services, technologies, and software" that Facebook offers. *Id.*, Ex. A at 1.

---

[1] When deciding a motion to transfer under 28 U.S.C. § 1404, the Court may consider undisputed facts outside of the pleadings. *See, e.g.*, *Loomer*, 2020 WL 2926357, at *2.

Facebook's Terms notify users that Facebook may modify the Terms and that continued use of Facebook constitutes acceptance of those updated procedures:

> We work constantly to improve our services and develop new features to make our Products better for you and our community. As a result, we may need to update these Terms from time to time to accurately reflect our services and practices. Unless otherwise required by law, we will notify you before we make changes to these Terms and give you an opportunity to review them before they go into effect. *Once any updated Terms are in effect, you will be bound by them if you continue to use our Products.* We hope that you will continue using our Products, but if you do not agree to our updated Terms and no longer want to be a part of the Facebook community, you can delete your account at any time.

*Id.* at § 4(1) (emphasis added).

Facebook's Terms also explain that users cannot "do or share anything" that violates Facebook's Terms or Community Standards, and that Facebook can "remove or restrict access to content that is in violation of these provisions." *Id.* at § 3(2). The Community Standards outline what content is and is not allowed on Facebook. *Id.* at § 5. Plaintiffs acknowledge that Facebook's Terms and Community Standards apply to them. *See, e.g.*, Am. Compl. ¶¶ 160, 231, 232, 245. For instance, plaintiff Jennifer Horton alleges she needed to understand "how to operate within the boundaries of the Defendants' Terms of Service because she did not want to lose her ability to communicate again." *Id.* ¶ 160.

On July 7, 2021, Plaintiffs commenced this litigation against Facebook and Mr. Zuckerberg in the Southern District of Florida. *See* Pls.' Compl. ("Compl.") (D.E. 1). Plaintiffs did not serve their initial complaint on either defendant. Then, on July 27, 2021, Plaintiffs filed an amended complaint, adding three named plaintiffs as well as two state-law claims. The amended complaint alleges that: (1) Facebook and Mr. Zuckerberg violated the First Amendment by censoring constitutionally protected speech; (2) Section 230 of the Communications Decency Act incentivized Facebook and Mr. Zuckerberg to "deplatform" and "censor" Plaintiffs, and so is

3

unconstitutional; (3) Facebook and Mr. Zuckerberg violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by failing to adhere to their "ostensibly objective standards" regarding content moderation; and (4) Facebook and Mr. Zuckerberg violated Florida law by "act[ing] in ways contrary to their published standards regarding censorship" and applying their standards inconsistently.  Am. Compl. ¶¶ 187–245.

Almost three weeks later—and still without having served either defendant—Plaintiffs sought leave to file an overlength motion for preliminary injunction. (D.E. 30).  To date, Plaintiffs have not filed a motion for preliminary injunction, and they did not effect service of process on either defendant.  Instead, Facebook and Mr. Zuckerberg contacted Plaintiffs' counsel and agreed to waive service at their own initiative. (*See* D.E. 73, 74).  Facebook and Mr. Zuckerberg now move to transfer this case to the Northern District of California in accordance with the forum-selection clause to which Plaintiffs agreed.

## LEGAL STANDARD

A forum-selection clause is presumptively enforceable under 28 U.S.C. § 1404(a).  *See Atl. Marine*, 571 U.S. at 62–63.  "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."  *Id.*; *see also Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (forum-selection clauses are "presumptively valid and enforceable"); *Loomer*, 2020 WL 2926357, at *2 (same); *Soffin*, 2014 WL 2938347, at *1 ("If there is a valid forum-selection clause, … the contractual venue selection controls.").

A plaintiff's contrary choice of forum "merits no weight," and a district court is prohibited from "consider[ing] arguments about the parties' private interests."  *Atl. Marine*, 571 U.S. at 64.

4

Plaintiffs seeking to evade a forum-selection clause bear the heavy burden of demonstrating that public-interest factors "overwhelmingly disfavor a transfer." *Id.* at 67.

## MEMORANDUM OF LAW

The Court should give "controlling weight" to Facebook's forum-selection clause and transfer this case to the Northern District of California. *Atl. Marine*, 571 U.S. at 63. The parties' forum-selection clause is valid and enforceable, it covers Plaintiffs' claims, and it is mandatory. No extraordinary circumstances justify disregarding the parties' agreement to litigate this case in California, and the inclusion of Mr. Zuckerberg as a defendant does not change the outcome of the transfer analysis. The Court should therefore grant a transfer pursuant to 28 U.S.C. § 1404(a).

### I. Facebook's Forum-Selection Clause Is Valid And Enforceable.

"Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam); *Sabino v. Kerzner Int'l Bahamas Ltd.*, 2014 WL 7474763, at *2 (S.D. Fla. Jan. 10, 2014) (same). Under this standard, "[a] forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281. None of these circumstances are present here, and Plaintiffs cannot bear the "heavy burden" of circumventing their agreement to litigate in the Northern District of California. *Margolis v. Warner Chilcott (US), LLC*, 2017 WL 9324774, at *2 (S.D. Fla. June 14, 2017).

To assess whether a contract was induced by "fraud or overreaching," courts look to whether "the clause was reasonably communicated to the consumer," who then had an opportunity

5

to reject its terms. *Krenkel*, 579 F.3d at 1281.[2] Here, Facebook's forum-selection clause was "reasonably communicated" to Plaintiffs, who were free to reject it. Each Plaintiff was presented with Facebook's Terms upon creating a Facebook account and was required to affirmatively agree to the applicability of those terms to access the service. *See* Duffey Decl. ¶¶ 2–3. The Terms at all relevant times identified California as the exclusive venue for disputes. *Id.* ¶ 5. Plaintiffs could have declined the Terms at the outset and terminated the registration process. Instead, they accepted Facebook's Terms and are now bound by them. *See, e.g.*, *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (enforcing forum-selection clause in terms accepted by plaintiffs as a condition of creating account); *Davis v. Avvo, Inc.*, 2011 WL 4063282, at *2–3 (M.D. Fla. Sept. 13, 2011) (similar). Indeed, Plaintiffs' own allegations acknowledge that Facebook's Terms and Community Standards apply to them. *See, e.g.*, Am. Compl. ¶ 160 (plaintiff Jennifer Horton recognizing she was unsure "of how to operate within the boundaries of the Defendants' Terms of Service because she did not want to lose her ability to communicate again"). Plaintiffs complain about the scope and application of those policies, and allege that Facebook applies them inconsistently. *See id.* ¶¶ 12, 41–45, 47, 220–32, 236–42.

Faced with similar motions to transfer, courts in this District and throughout the country routinely treat Facebook's Terms—and the forum-selection clause contained within them—as binding. *See Loomer,* 2020 WL 2926357, at *1; *Soffin*, 2014 WL 2938347, at *2; *see also, e.g.*, *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1160 (D. Haw. 2018) ("Under similar circumstances, numerous courts have found Facebook's … forum-selection clause to be valid.")

---

[2] Courts apply federal law to determine whether a forum-selection clause is enforceable. *See, e.g.*, *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). However, to the extent the application of state contract law is required to determine the validity of the forum-selection clause, "the laws of the State of California will govern" pursuant to Facebook's Terms. Duffey Decl., Ex. A at § 4(4).

(collecting cases); *Loveland*, 2021 WL 1734800, at *1; *Kidstar*, 2020 WL 4382279, at *5; *Hayes*, 2019 WL 8275335, at *2; *Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) ("Indeed, the Court is not aware of any case concluding that the forum selection clause in Facebook's [Terms] is invalid."); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 903 (S.D. Ill. 2012); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012). There is no reason to depart from those decisions here. Transfer to the Northern District of California will not "deprive[]" plaintiffs of their "day in court" or their available remedies, and there is no basis to assert that transfer would "contravene public policy." *Loomer*, 2020 WL 2926357, at *3–4 (granting Facebook's motion to transfer to the Northern District of California). Accordingly, the parties' forum-selection clause is valid and enforceable.

## II.     Plaintiffs' Claims Fall Within The Clause's Broad Scope.

All of Plaintiffs' claims fall within the scope of the forum-selection clause. Facebook's Terms require that "any claim, cause of action, or dispute" against Facebook "that arises out of or relates to these Terms or the Facebook Products … will be resolved exclusively in" California. Duffey Decl., Ex. A at § 4(4). To fall within this provision, Plaintiffs' "claims do not have to be about a breach of the parties' agreement"; they "merely have to 'relate' to the Terms" or Facebook Products. *Loomer*, 2020 WL 2926357, at *3 (finding that "the terms of [Facebook's] forum-selection clause are broad" and encompass defamation claims); *Miller v. Facebook, Inc.*, 2010 WL 9525523, at *2 (N.D. Ga. Jan. 15, 2010) (holding that the use of the term "any dispute" was "broad enough to include" patent-infringement claims where the alleged infringement "occurred either on Facebook's website or in the use of Facebook's site"); *see also Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (finding that where a contract refers to "*any* 'case or controversy arising under or in connection with this Agreement' ... [it] includes all causes of action arising directly or indirectly from the business relationship evidenced by the

7

contract"); *Jiangsu Hongyuan Pharm. Co., Ltd. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1326 (S.D. Fla. 2016) ("In this Circuit, … '[c]lauses referencing any lawsuit regarding this agreement and any action brought by either party in any court have been broadly construed.'").

Here, Plaintiffs' claims fall within the scope of the forum-selection clause for two independent reasons. *First*, all of Plaintiffs' claims "arise[] out of or relate[] to" a "Facebook Product," specifically the Facebook service itself. Plaintiffs assert that Facebook limited or removed their ability to use its service to post content, whether by censoring their posts or banning them from the service. *See, e.g.*, Am. Compl. ¶¶ 12, 54, 132. For instance, Mr. Trump alleges that Facebook "censored" his Facebook account and "block[ed] his ability" to use the service to communicate with his followers. *Id.* ¶ 139. Each Plaintiff also makes similar allegations regarding deplatforming, suspension, or assertions that pages are "monitored" or "fact-checked." *See, e.g.*, *id.* ¶¶ 146, 151, 156, 158, 168–170, 172, 177–180, 184–186. These allegations "relate to" Plaintiffs' use of Facebook and thus fall within the broad language of the forum-selection clause. Moreover, each cause of action stems from Plaintiffs' service-specific allegations: Plaintiffs' First Amendment and Section 230 claims hinge on Facebook's alleged censorship of content on the Facebook service, and both state-law claims relate to Facebook's treatment of third-party content on that same service.

*Second*, the forum-selection clause also applies to Plaintiffs' claims because they "arise out of or relate to [Facebook's] Terms"—which mandate compliance with Facebook's Community Standards. As described above at 3, Facebook's Terms restrict what users "can share and do on Facebook" and notify users that Facebook "can remove or restrict access to content that is in violation of' Facebook's Terms, including its Community Standards. Plaintiffs' First Amendment claims challenge Facebook's applications of those standards in removing Plaintiffs' content and

8

accounts. *See* Am. Compl. ¶¶ 220–21, 236–37, 239–42. And both of Plaintiffs' state-law claims explicitly rely on Facebook's alleged noncompliance with, and inconsistent application of, its own policies. Plaintiffs claim that Facebook "repeatedly failed to act in good faith and accordance with [its] stated policies" and has "engaged in a subjective pattern of discriminating against disfavored parties" despite having "policies ostensibly proclaim objective, uniform standards." *Id.* ¶¶ 220–21; *see also id.* ¶¶ 236–37, 239–41. Indeed, Plaintiffs' requested relief proves the point. They ask the Court for an order "compelling Defendants to honor their own policies," "consistently to apply Defendants' own standards" and "only apply Defendants' published standards when evaluating content on the platform." *Id.* ¶ 245. Each of those requests "arises out of or relates to" the Terms.

### III. Facebook's Forum-Selection Clause Is Mandatory.

Facebook's forum-selection clause is mandatory because it "dictates an exclusive forum for litigation under the contract." *Coffee Bean Trading-Roasting, LLC v. Coffee Holding, Inc.*, 510 F. Supp. 2d 1075, 1077 (S.D. Fla. 2007). The clause provides that applicable claims "*will be* resolved *exclusively* in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Duffey Decl., Ex. A at § 4(4) (emphases added). This language is unequivocal and mandatory. *See, e.g.*, *E.K.D. ex rel. Dawes*, 885 F. Supp. 2d at 901 ("A forum-selection clause is mandatory where its language is obligatory and clearly manifests an intent to make venue compulsory and exclusive."); *see also Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 976 (11th Cir. 2009) (language declaring that specific court "will be the venue for any dispute" is mandatory); *Trafalgar Cap. Specialized Inv. Fund v. Hartman*, 878 F. Supp. 2d 1274, 1283–84 (S.D. Fla. 2012) (nondiscretionary terms such as "exclusively" are "the hallmark of a mandatory forum selection clause").

9

## IV. No Extraordinary Circumstances Justify Disregarding The Parties' Contract.

No "extraordinary circumstances" justify disregarding the parties' agreement to this valid forum-selection clause. Although 28 U.S.C. § 1404 typically requires a broad inquiry into "whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice,'" "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis." *Atl. Marine*, 571 U.S. at 62–63 (quoting § 1404(a)). Courts must ignore "arguments about the parties' private interests," *id.*, and instead only (1) "determine whether an adequate alternative forum exists" and (2) "consider the relevant public interest factors to determine whether dismissal is appropriate," *Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1142 (S.D. Fla. 2019). Here, the relevant factors require transfer to the Northern District of California.

### A. The Northern District Of California Is An Adequate Alternative Forum.

"[T]he Northern District of California is clearly an available adequate alternative forum for the litigation of Plaintiffs' claims." *Hindi v. BirdEye, Inc.*, 2019 WL 4091425, at *8 (S.D. Fla. Aug. 29, 2019). That court has personal jurisdiction over Facebook, which is headquartered there, as well as over Mr. Zuckerberg, who resides there.[3] *See* Am. Compl. ¶¶ 26–27; *see also Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (noting a corporation's principal place of business is a "paradigm all-purpose forum[]"). Indeed, this court and others routinely transfer cases to the Northern District of California based on Facebook's forum-selection clause. *See, e.g.*, *Loomer,* 2020 WL 2926357, at *1; *Soffin*, 2014 WL 2938347, at *2.

---

[3] Mr. Zuckerberg does not waive, and expressly preserves, the right to challenge personal jurisdiction in the Southern District of Florida because Plaintiffs' complaint does not allege facts sufficient to confer jurisdiction here. However, transferring the case to the Northern District of California will resolve any dispute over personal jurisdiction because Mr. Zuckerberg resides in that forum.

10

### B. The Public-Interest Factors Do Not Justify Ignoring The Forum-Selection Clause.

Public-interest factors "will rarely defeat a transfer motion" and "forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64. Here, the public-interest factors outlined in *Atlantic Marine*—the risk of "administrative difficulties flowing from court congestion," "local interest in having localized controversies decided," and "the interest in having the trial of a diversity case in a forum that is at home with the law"—confirm the Court should transfer this case. *Id.* at 62–64 & n.6. Plaintiffs have no reasonable basis for concern over "administrative difficulties" or "court congestion" in resolving this case in the Northern District of California. And to the extent "local interest[s]" are at play, this case has greater ties to California, where Facebook is headquartered and where the alleged misconduct purportedly took place.

Plaintiffs also have no legitimate basis for seeking resolution in Florida rather than California. Plaintiffs bring primarily federal claims (indeed, their initial complaint alleged *only* federal claims, *see* Compl. ¶¶ 146–71), and they purport to represent a *nationwide* class, Am. Compl. ¶ 246. Both the Southern District of Florida and the Northern District of California are equally capable of applying federal law. *See, e.g.*, *Hight v. U.S. Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1186 (S.D. Fla. 2019); *see also Beckerman v. Heiman*, 2006 WL 1663034, at *9 (S.D.N.Y. June 16, 2006) ("[F]ederal courts are equally capable of adjudicating" federal claims.). And a federal court in California is equally competent to decide any available Florida law claims. *See, e.g.*, *Stokes v. Markel Am. Ins. Co.*, 2019 WL 8017457, at *5 (S.D. Fla. June 28, 2019) ("[A] district court in either Florida or Delaware is equally capable of applying the relevant law to the dispute."); *Pronto Cash of Fla., Inc. v. Digit. Currency Sys., Inc.*, 2006 WL 8432522, at *6 (S.D. Fla. Nov. 28, 2006) ("[N]umerous cases containing FDUTPA claims have been transferred outside of Florida in their entirety where the parties to the dispute entered into an agreement containing a

11

forum selection clause."); *SAI Ins. Agency v. Applied Sys., Inc.*, 858 So. 2d 401, 403–04 (Fla. Dist. Ct. App. 2003) (declining to impose a rule that "as a matter of Florida public policy … a venue clause in a contract may never be enforced in the face of a claim under [F]DUTPA").

Indeed, the public interest in predictability and enforceability of contracts weighs strongly in favor of enforcing the parties' choice of forum: "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 571 U.S. at 63; *accord Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 64 (D.D.C. 2014); *Miller*, 2010 WL 9525523, at *1. The relevant factors all support a transfer to the Northern District of California, and Plaintiffs cannot shoulder the "burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67.

## V. The Court Should Transfer This Entire Case To California, Including As To Mr. Zuckerberg.

Although he is not a party to the forum-selection clause between Plaintiffs and Facebook, transfer of this case as to Mr. Zuckerberg is also appropriate under 28 U.S.C. § 1404(a) because "convenience and the interest of justice" support a transfer. *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1264 (S.D. Fla. 2013). Indeed, many of the cases in which courts grant transfer to the Northern District of California pursuant to Facebook's forum-selection clause also include Mr. Zuckerberg as a defendant. *See, e.g.*, *Loveland*, 2021 WL 1734800, at *1; *Kidstar*, 2020 WL 4382279, at *1; *Atkinson v. Facebook, Inc.*, 2020 WL 6151527, at *1 (D. Conn. July 27, 2020); *We Are The People, Inc. v. Facebook, Inc.*, 2020 WL 2908260, at *1 (S.D.N.Y. June 3, 2020); *Hayes*, 2019 WL 8275335, at *1; *see also Miller*, 2010 WL 9525523, at *1 (transferring entire case, including non-Facebook defendant). This Court should reach the same outcome for two reasons.

12

*First*, judicial economy and the interests of justice counsel strongly in favor of transferring this case as a whole. Mr. Zuckerberg is sued here in his capacity as Facebook's CEO on legal theories identical to those asserted against Facebook itself. All four of Plaintiffs' causes of action are directed at both Facebook and Mr. Zuckerberg. *See, e.g.*, Am. Compl. ¶¶ 194, 207, 232, 236. And Plaintiffs refer to "Defendants," collectively, dozens of times throughout the complaint in describing their alleged conduct. *See, e.g.*, *id.* ¶ 6 ("Defendants indefinitely banned the sitting President of the United States from their platform for exercising his constitutional right of free speech."); *id.* ¶ 80 ("By banning the Plaintiff and Putative Class members, Defendants made it more difficult for them directly to communicate with the American public."). Severing this case as to Mr. Zuckerberg would result in duplicative litigation, and the interests of justice necessitate keeping the case together in California. The analysis of additional public-interest factors set forth above at IV.B confirms this conclusion.

*Second*, transferring this case as a whole to California furthers the convenience of the parties and the witnesses. Mr. Zuckerberg resides in California, Am Compl. ¶ 27, Facebook's principal place of business is in California, *id.* ¶ 26, and the bulk of the relevant witnesses and documents are also located in California. Although several of the Plaintiffs reside in Florida, their claims all stem from their use of the Facebook service and Defendants' decisions, which are centered in California. In short, the Defendants' alleged conduct that forms the basis for each of Plaintiffs' claims took place in California, not Florida, and the case should therefore be litigated in California.

## CONCLUSION

For all of the foregoing reasons, Defendants Facebook, Inc. and Mark Zuckerberg respectfully request that the Court grant their motion and transfer this case to the Northern District of California.

## RULE 7.1(a)(3) CERTIFICATION

Counsel certifies that they have conferred with Plaintiffs' counsel by e-mail in a good-faith effort to resolve the issues raised in this motion and that Plaintiffs' counsel opposes the relief requested in this motion.

Dated: September 17, 2021

*s/ Maria J. Beguiristain*
Maria J. Beguiristain
Florida Bar No. 69851
W. Dylan Fay
Florida Bar No. 125673
WHITE & CASE LLP
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: mbeguiristain@whitecase.com
Email: wfay@whitecase.com


Craig S. Primis, P.C. (admitted *pro hac vice*)
K. Winn Allen, P.C. (admitted *pro hac vice*)
Ronald K. Anguas, Jr. (admitted *pro hac vice*)
Kate H. Epstein (admitted *pro hac vice*)
James Y. Xi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
craig.primis@kirkland.com
winn.allen@kirkland.com
ronald.anguas@kirkland.com
kate.epstein@kirkland.com
james.xi@kirkland.com

*Attorneys for Defendants Facebook, Inc. and Mark Zuckerberg*

## CERTIFICATE OF SERVICE

I CERTIFY that, on September 17, 2021, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system and that the foregoing document will be served on all counsel of record via transmission of a notice of electronic filing generated by the CM/ECF system.

                                                *s/ Maria J. Beguiristain*
                                                Maria J. Beguiristain