# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| DONALD J. TRUMP, the Forty-Fifth President of the United States, ELIZABETH ALBERT, KIYAN AND BOBBY MICHAEL, JENNIFER HORTON, ANDRES CABO, MAGALYS RIOS, AND MARIA RODRIGUEZ-FRESNEDA, INDIVIDUALLY, AND ON BEHALF OF THOSE SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>    v.<br><br>FACEBOOK, INC., and MARK ZUCKERBERG,<br><br>    Defendants. | Civil Action No. 1:21-cv-22440-KMW<br><br><br><br><br><br><br><br><br><br>**ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

This sur-reply is respectfully submitted to address *Trump v. YouTube*, No. 1:21-cv-22445-KMM (S.D. Fla. Oct. 6, 2021), which Defendants' Reply asks this Court to follow, calling it a "near-identical" case, but which was decided after Plaintiffs submitted their opposition.

## ARGUMENT

### I. *YouTube* Does Not Address the Core Violation of Florida Public Policy Defendants Seek to Accomplish Through Transfer

Under well-established law, Facebook's forum-selection provision is unenforceable if it violates Florida public policy by depriving Plaintiffs of an important Florida statutory remedy. *Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1139 (S.D. Fla. 2019) (Scola, J.) (contract's choice of forum unenforceable where state has a clear public policy "against attempt[s] to skirt the laws of [that state] by use of forum selection clauses'") (quoting *Davis v. Oasis Legal Finance Operating Company, LLC*, 936 F.3d 1174, 1179 (11th Cir. 2019) (citation omitted)). While *YouTube* quotes extensively from *Gordon*, it wholly fails to address the complete erasure of Florida's Social Media Platforms Act (SMPA)—and hence violation of Florida public policy—that Defendants seek to accomplish here.

If Facebook's choice of forum provision were enforced, this case would be decided not only *in* California, but under the "*laws* of the State of California . . . *without regard to conflict of law provisions*." (Facebook TOS § 4, https://www.facebook.com/terms.php?ref=pf) (emphasis added). In other words, Florida statutory law simply *would not apply*, and Plaintiffs will be completely deprived of their SMPA remedy.[1]

This result would clearly contravene Florida public policy. Florida's legislature and

---

[1] There is no California statute remotely similar to the SMPA, and Defendants make no claim that there exists any California cause of action against a social media company for censoring or de-platforming a user. The SMPA was found unconstitutional by another district court in the *Netchoice* litigation, but the "[o]pinion of a district court carries no precedential weight, even within the same district," and thus the flawed *NetChoice* decision is not binding on this Court. *United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (*en banc*).

governor did not believe they were passing a statute with zero operative effect when they enacted the SMPA. The public policy behind that Act was expressed by Florida's governor: "This session, we took action to ensure that 'We the People', real Floridians across the Sunshine State, are guaranteed protection against the Silicon Valley elites. Many in our state have experienced censorship - firsthand in Cuba and Venezuela. If Big Tech censors enforce rules inconsistently, to discriminate in favor of the dominant Silicon Valley ideology, they will now be held accountable." (Ron DeSantis, 46th Gov. of Florida, https://www.flgov.com/2021/05/24/governor-ron-desantis-signs-bill-to-stop-the-censorship-of-floridians-by-big-tech.) This clear public policy will be obliterated if the "Big Tech censors" can use forum selection provisions to make the SMPA inapplicable. As explained in *Gordon*, that is a patently unenforceable result, enabling Defendants to "skirt the laws" of Florida "by use of [a] forum selection clause[.]" *Gordon*, 418 F. Supp. 3d at 1139 (quoting *Davis*, 936 F.3d at 1179) (citation omitted).

As another District Court in this Circuit held in analogous circumstances, when a contract's "choice [of law and choice of forum] clauses work together" to circumvent and deny a statutory remedy of the "forum state"—in this case, Florida—both those clauses are unenforceable, and transfer must be denied: "In sum, the choice clauses work together not only to deprive Plaintiff of a remedy. . . but also to violate the strong public policy of the forum state. Accordingly. . . both the forum-selection clause and the choice-of-law clause are unenforceable." *Wingard v. Lansforsakringar AB*, No. 2:11-CV-45-WKW, 2013 U.S. Dist. LEXIS 141572 at *33 (M.D. Ala. Sept. 30, 2013).

Defendants may claim that Facebook's choice-of-law clause can be severed from its forum selection clause and that the transferee court will therefore apply Florida law, including the SMPA, just as this Court would. But if this action is transferred, Defendants will instantly argue that the

2

federal district court in California is bound to decide the public policy issue *as a matter of California law* and that, as a result, Facebook's choice-of-California-law clause is perfectly enforceable (because it does not offend any *California* public policy), knocking Florida law out of this case and rendering the SMPA a nullity.[2] This is the playbook always pursued the big social media platforms, with great success.[3]

That is the true reason Defendants seek transfer here. They suffer no prejudice from a Florida forum; indeed, before this case was filed, Facebook (acting through a "trade association") had availed itself of a Florida forum in the *Netchoice* litigation to challenge the SMPA. Defendants seek transfer because they intend—but have conveniently neglected to mention to the Court—transfer to result in California law being applied, rendering the SMPA a nullity. That result violates the principles laid out in *Davis* and *Gordon* because it seeks through "use of [a] forum selection clause" to obliterate Florida's policy of giving Florida residents protection against Big Tech censorship under the SMPA. Facebook's goal is to wholly deprive Plaintiffs of "their day in court," nullifying their SMPA remedy, and transfer must therefore be denied. *Davis*, 936 F.3d at 1132; *Gordon*, 418 F. Supp. 3d at 1138.

II. ***YouTube* is Distinguishable Because Facebook's Forum-Selection Clause, Unlike YouTube's, Applies Only to Claims Against the Company, and Thus Does Not Apply to Plaintiff's Claims Against Defendant Mark Zuckerberg**

Even if Facebook's forum-selection clause did not violate Florida public policy (which it does), it would still not require transfer in this case because it applies to—and only to—any "claim,

---

[2] To be clear, it is Plaintiffs' position that Florida law should and does govern all state law issues in this case.
[3] *See, e.g.*, *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1109, 1112 (N.D. Cal. 2016) ("Although this case was originally file[d] in the District of Massachusetts, because it was transferred here due to a contractual forum-selection clause, California is [now] considered the forum . . . . Plaintiff has not cited any case in which a California court refused to apply California law pursuant to a valid contractual choice of law provision because California law offered fewer protections than another state's law. The choice of law provision is thus enforceable and Plaintiff's claim under [a Massachusetts statute] must be dismissed."); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1047 (N.D. Cal. 2013) (plaintiffs' N.Y. statutory claim was "barred by Facebook's enforceable choice of law provision").

cause of action, or dispute you have ***against us*** [***i.e., Facebook***]." (Facebook TOS § 4, *supra*) (emphasis added).[4] Thus, the clause manifestly does *not* apply to Plaintiffs' claims against Defendant Mark Zuckerberg ("Zuckerberg"),[5] and Defendants cannot demand transfer of those claims. *YouTube* is distinguishable, because YouTube's forum-selection clause applies to "*[a]ll claims* arising out of or relating to these terms or the Service" (as opposed to only claims against YouTube). Accordingly, unlike in *YouTube*, the forum selection clause would in this case send some claims to California while leaving substantially identical claims, based on the same facts, still pending in this Court. It is well-settled that courts in this District and in Florida "will not enforce [a] forum selection clause" when doing so would produce claim-splitting resulting in "judicial inefficiency," "potentially competing judgments," and "simultaneous interstate litigation."[6]

Plaintiffs are not arguing that any suit against Facebook can avoid a California forum simply by naming Zuckerberg as a co-defendant. This case is, to the say the least, unusual—and unusually important—because it involves the de-platforming of a sitting President of the United States, a decision made personally and directly by Zuckerberg himself. Thus, Plaintiffs' claims against Zuckerberg are real and paramount, and because they are not covered by Facebook's forum selection clause, Plaintiffs have every right to bring those claims in Florida.

Zuckerberg may say he can invoke Facebook's forum-selection clause as a "third party

---

[4] The word "us" in Facebook's TOS plainly refers to Facebook, Inc. See *id*. § 5(1) ("These Terms . . . make up the entire agreement *between you and Facebook, Inc*. regarding your use of *our* Products.") (emphasis added).
[5] Plaintiffs' claims against Zuckerberg include claims under the First Amendment and Florida's SMPA and FDUTPA. *See, e.g.*, *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069 (Fla. App. 2008) (FDUTPA claims can be brought against individual shareholder/officer of company where such individual directly participated in challenged acts).
[6] *Woods v. Christensen Shipyards, Ltd.*, No. 04-61432-CIV, 2005 U.S. Dist. LEXIS 42994 at *34 (S.D. Fla. Sept. 23, 2005); *BP Prods. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1257-58 (S.D. Fla. 2006); *BP Prods. N. Am., Inc. v. Coral Petrol., Inc.*, 462 F. Supp. 2d 1221 (S.D. Fla. 2006); *Am. Safety Cas. Ins. Co. v. Mijares Holding Co.*, 76 So. 3d 1089, 1092 (Fla. App. 3d Dist. 2011); *McWane, Inc. v. Water Mgmt. Servs., Inc.*, 967 So. 2d 1006 (Fla. App. 1st Dist. 2007).

beneficiary." *See, e.g.*, *Peter v. Keyes Co.*, 402 Fed. Appx. 448, 451 (11th Cir. 2006) (non-parties to contract cannot invoke forum selection clause "unless it is determined that they are a third party beneficiary") (quoting *Fla. Power & Light Co. v. Road Rock, Inc.*, 920 So. 2d 201, 203 (Fla. App. 2006)). But Facebook's TOS explicitly state, "[t]hese Terms do not confer any third-party beneficiary rights." (Facebook TOS § 5(6), https://www.facebook.com/terms.php?ref=pf.) Contrast this to the TOS of Facebook's subsidiary, Instagram: "*Our. . . agents. . . can invoke our rights under this agreement in the event they become involved in a dispute.*" (Instagram, TOS, https://help.instagram.com/581066165581870) (emphasis added). Given that Facebook left this provision out of its own TOS (while inserting it into Instagram's), and that ambiguities in Facebook's contract must be read in Plaintiffs' favor, it follows that under Facebook's TOS, Facebook's "agents," such as Zuckerberg, *cannot* invoke Facebook's forum-selection rights.

More fundamentally still, even if Zuckerberg could enforce Facebook's forum selection clause (which he cannot), that clause would still not apply to claims against him, because by its own terms that clause applies only to claims against *Facebook*. *See, e.g., Holtzman v. Vill. Green Mgmt. LLC*, No. 2:19-cv-11150, 2020 U.S. Dist. LEXIS 8235 at **28-29 (E.D. Mich. Jan. 17, 2020) (issue of whether non-signatory could invoke selection clause is "analytically distinct" from issue of whether that clause applies to the claims asserted, which is "a matter of contract interpretation"). Whether or not Zuckerberg can invoke Facebook's forum-selection clause, he certainly cannot rewrite it, and that clause does not cover claims against him. Accordingly, those claims must stay in Florida, and to avoid "judicial inefficiency" and "potentially competing judgments," this Court should refuse to enforce the forum selection clause in toto, denying transfer.

### III. *YouTube* Is Distinguishable Because, Unlike YouTube, Facebook De-platformed Plaintiff Trump While He Was Still President

Judge Moore grounded his Order on Plaintiff Trump's allegation that Defendant YouTube

5

had permanently, and unconstitutionally, restrained his speech on January 26, 2021, *after* Plaintiff had left office and, therefore, the government entity exception for forum-selection contained in YouTube's Terms of Service (TOS) did not apply to the former President. Unlike YouTube, Defendant Facebook unconstitutionally restrained the then President's speech on January 7, 2021, while Plaintiff was still in office, a prior restraint that remained in place as President Trump transitioned to citizen Trump on January 20, 2021, and which continues to this day.

Facebook does not have an enforceable contract with Plaintiff nor any contract whatsoever. Further, it was settled law that Plaintiff's account was "not a private one." *Knight v. Trump*, 928 F.3d 226, 231 (2nd Cir. 2019); *see also, Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019) (any previous Facebook contract terms are of no effect). Facebook's Government Entity TOS state, "terms relating to venue and governing law do not apply to your Official Use." This exception was not included in Facebook's TOS when Plaintiff created his account in May of 2009. Facebook created its separate government TOS in October of 2009. After Plaintiff was sworn in as President in January of 2017, Facebook never sought to contract with him under its government terms, which it uses with all government entities, and of course, the President of the United States is a government entity. Accordingly, Facebook lacks the basic offer and acceptance required for any contract. An entire regime of federal contracting law applies when social media are contracting with the federal government, ranging from the Contract Disputes Act to the Antideficiency Act, among others.[7] Consequently, there is no precedent for a forum selection being imposed upon the federal government.

Magically—and quite bizarrely—Defendants want this Court to believe Plaintiff's private

---

[7] For example, 41 U.S.C. § 7102 states that the procurement of "property" or "services" is governed by this federal contracting law. Another example of how regular, private contracts cannot be imposed upon federal entities is the Anti-deficiencies Act (ADA), 31 USC § 1341. This prevents indemnity provisions, which are in private TOS.

account, set up twelve (12) years before he became President, was automatically reactivated, absent the ability to post to Facebook, when he became a private citizen again. Defendants' Reply appears to admit that Plaintiff Trump never had an opportunity to reactivate that earlier account and have a "meeting of the minds" under Defendants' TOS, because he was already *banned*. Facebook's own inaction or decision not to contract cannot serve to its benefit now.

As there were less than two (2) weeks left in his term of office when Defendant Facebook permanently suspended Plaintiff, it is not reasonable to expect Plaintiff to have brought this lawsuit while still President. Nonetheless, the Plaintiff's statements, and the Defendant's acts complained of complained in response to these statements, both occurred while Plaintiff was a government entity. This case has been filed within that statute of limitations by the one who was and continues to be injured since January 7, 2021. Therefore, by virtue of Defendant's clear language in its TOS excluding government entities from its forum-selection clause, this action is properly filed.

**IV.  *YouTube* Did Not Address Florida Law Holding That A Forum Selection Clause Does Not Survive Repudiation**

*YouTube* does not support Defendants' claim that Facebook's forum selection clause survived Facebook's de-platforming of President Trump, because *YouTube* never recognized that under Florida law, a forum selection clause does not survive where, as here, one party has repudiated and "'unequivocally terminated' the entire agreement." *Aberdeen Golf & Country Club v. Bliss Constr.*, 932 So. 2d 235, 240 (Fla. App. 4th Dist. 2005). Facebook anticipatorily repudiated and "unequivocally terminated" its "entire agreement" with President Trump when it de-platformed him on January 7, 2021, and thereafter refused to recognize any obligations thereunder. Just as in *Aberdeen Golf*, Facebook cannot be permitted to wholly terminate a contract, repudiate its duty to perform its own obligations, and then take advantage of that contract's forum selection clause. For the foregoing reasons, Plaintiffs hereby request oral argument.

Respectfully submitted,

*/s/ Matthew Lee Baldwin*
Matthew L. Baldwin, Esq.
Florida Bar No. 27463
VARGAS GONZALEZ
BALDWIN DELOMBARD, LLP
815 Ponce De Leon Blvd., Third Floor
Coral Gables, FL  33134
Telephone: 305.631.2528
Email: Matthew@VargasGonzalez.com
E-service: Service8@VargasGonzalez.com


*/s/ Carlos Trujillo*
Carlos Trujillo, Esq.
Florida Bar No. 42697
VARGAS GONZALEZ
BALDWIN DELOMBARD, LLP
815 Ponce De Leon Blvd., Third Floor
Coral Gables, FL  33134
Telephone: 305.631.2528
Email: Ctrujillo@VargasGonzalez.com
E-service: Service8@VargasGonzalez.com

*Of Counsel*

JOHN P. COALE *(Pro Hac Vice)*
2901 Fessenden St. NW
Washington, D.C. 20008
Telephone: (202) 255-2096
Email: johnpcoale@aol.com

JOHN Q. KELLY (*Pro Hac Vice*)
E-mail: jqkelly@ibolaw.com
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Facsimile: (203) 661-9461

MICHAEL J. JONES *(Pro Hac Vice)*
E-mail: mjones@ibolaw.com
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Facsimile: (203) 661-9461

RYAN S. TOUGIAS *(Pro Hac Vice)*
E-mail: rtougias@ibolaw.com
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Facsimile: (203) 661-9461

RICHARD P. LAWSON, ESQ.
Florida Bar No. 165085
Gardner Brewer Martinez-Monfort P.A.
400 North Ashley Drive, Ste. 1100
Tampa, Florida 33602
(813) 221-9600 Telephone
(813) 221-9611 Fax
Primary Email: rlawson@gbmmlaw.com
Secondary
Email:  litigation@gbmmlaw.com

LUIS MARTINEZ-MONFORT, ESQ.
Florida Bar No. 0132713
Gardner Brewer Martinez-Monfort P.A.
400 North Ashley Drive, Ste. 1100
Tampa, Florida 33602
(813) 221-9600 Telephone
(813) 221-9611 Fax
Primary Email: rlawson@gbmmlaw.com
Secondary
Email:  litigation@gbmmlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 19, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and electronically provided to all Counsel of Record registered for service of same.

      By:   */s/ Matthew Lee Baldwin*
              Fla. Bar No.: 27463